**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

-----------------------------------------------------------------X
DINAH MIRSON,                                                        :
                                                                    :
                       Plaintiff,                   :
                                                                    :
        -against-                                         :
                                                                    :
WELLS FARGO ADVISORS; and                                           :
WELLS FARGO CLEARING SERVICES, LLC,   :
                                                                    :
               Defendants.              :
-----------------------------------------------------------------X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DINAH MIRSON, by and through her attorneys, Goodstadt Law Group, PLLC and Gonzalez, Shenkman & Buckstein PL, as and for her Complaint against Defendants WELLS FARGO ADVISORS and WELLS FARGO CLEARING SERVICES, LLC (together, "Defendants," "Wells Fargo" or the "Bank"), hereby states and alleges as follows:

## PRELIMINARY STATEMENT

1.      Wells Fargo, self-described as a premier financial services firm serving investors nationwide, is one of the largest banks in the country, serving clients in all 50 states. Unfortunately, it places the almighty dollar ahead of the well-being of its employees and turns a blind eye towards discrimination and protects its rainmakers, even at the expense of its most loyal and long-serving employees.

2.      Plaintiff Dinah Mirson is a successful long-term employee at Wells Fargo whose otherwise stellar employment was marred by the discriminatory mistreatment from Jeffrey Bowman who, at the time, was one of the Bank's most successful financial advisors, in violation

of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII"), and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01-760.11 ("FCRA").

3.     Specifically, and in stark contrast to the manner in which he treated Ms. Mirson's male colleagues, Mr. Bowman constantly berated and belittled Ms. Mirson, and treated her as a second-classed citizen.  Mr. Bowman also disciplined Ms. Mirson for issues that were not her fault or beyond her control.  Indeed, Mr. Bowman was verbally and psychologically abusive towards Ms. Mirson because she is a woman, including while she was preparing for medical appointments and infusions to treat her Crohn's Disease and Colitis that returned after years of remission due to the stress and anxiety created by Mr. Bowman's unlawful mistreatment.

4.     This egregious mistreatment by Mr. Bowman was observed by senior executives at the Bank who graciously offered their support, but nothing was done to stop Mr. Bowman's abusive behavior.

5.     Even after filing a formal complaint with the Bank's Employee Relations department, nothing was done to address or correct this unlawful misconduct.  Rather, it was ignored because Mr. Bowman was a major producer of revenues for the Bank.

6.     This unlawful mistreatment resulted in Ms. Mirson's need to take a medical leave of absence to address her mental health and physical well-being.  In addition to the flare up of her Crohn's Disease, she has been diagnosed with Post Traumatic Stress Disorder due to the years of psychological abuse suffered while working with Mr. Bowman.

7.     Most recently, while out on medical leave to treat the medical condition created by Defendants, the Bank has advised Ms. Mirson that her employment will be terminated effective August 30, 2024.

8.     The Bank's abhorrent misconduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Ms. Mirson's rights, which has caused and continues to cause her to suffer substantial economic and non-economic damages, severe emotional distress, and permanent harm to her professional and personal reputations and career opportunities.

9.     Accordingly, this lawsuit has been brought to hold Wells Fargo accountable for its discriminatory mistreatment of Ms. Mirson on the basis of her gender in violation of Title VII and the FCRA.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District, namely Palm Beach County.

## PROCEDURAL REQUIREMENTS

12.     On or about February 2, 2023, Ms. Mirson filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII.  The Charge arises out of the same facts alleged herein.

13.     The Charge was cross-filed with the Florida Commission on Human Relations.

14.     On May 30, 2024, the EEOC issued Ms. Mirson a Notice of Right to Sue to pursue this matter in Federal District Court.  This action has been filed within 90 days of Ms. Mirson's receipt of his Notice of Right to Sue from the EEOC.

15.     Any and all additional prerequisites to the filing of this suit have been met.

## PARTIES

16.     Plaintiff Dinah Mirson is a former employee of Defendants and resides in Palm Beach County, Florida.  Ms. Mirson was hired by the Bank in or around May 2008.  At all relevant times, Ms. Mirson worked in the Bank's Palm Beach office and met the definition of an "employee" under all applicable statutes.

17.     Defendant Wells Fargo Clearing Services, LLC is a Delaware limited liability company with its principal offices located at One North Jefferson Avenue, St. Louis, Missouri 63103, and is a non-bank affiliate of Wells Fargo & Company.  Defendant Wells Fargo Clearing Services, LLC maintains an office at 255 South Country Road, Suite 201, Palm Beach, Florida 33480, and is authorized to transact business there.  At all times relevant herein, Defendant Wells Fargo Clearing Services, LLC was and is an "employer" and has employed Plaintiff under all relevant statutes.

18.     Defendant Wells Fargo Advisors is, upon information and belief, a Delaware company that has become a trade name used by Defendant Wells Fargo Clearing Services, LLC.  Defendant Wells Fargo Advisors maintains an office at 255 South Country Road, Suite 201, Palm Beach, Florida 33480, and is authorized to transact business there.  At all times relevant herein, Defendant Wells Fargo Advisors was and is an "employer" and has employed Plaintiff under all relevant statutes.

## FACTUAL ALLEGATIONS

### Ms. Mirson's Employment with Defendants

19.     Ms. Mirson joined Wachovia, a predecessor of Defendants in or around May 2008 as a Registered Client Associate.

20.     Prior to her career at Defendants, Ms. Mirson worked at a small boutique trading firm, Cohen Specialists, LLC, in compliance review and oversight. Ms. Mirson has been in the financial services business for more than 17 years.

21.     During her employment with Defendants, Ms. Mirson's performance was stellar, and was held in high esteem across all business channels.

22.     Indeed, Ms. Mirson built an excellent reputation from the time she started with the Bank in 2008, and successfully served some of the Bank's highest net worth clients for many years, which has been demonstrated through accolades and commendations from both executives within Wells Fargo and from the clients with whom she worked.

23.     Ms. Mirson's performance and achievements are beyond dispute.

**Jeffrey Bowman Engages in Discriminatory Mistreatment of Ms. Mirson**

24.     Notwithstanding her performance, everything changed in or around November 2012 when Ms. Mirson almost exclusively began supporting Jeffrey Bowman, one of the Bank's top financial advisors.

25.     Indeed, Mr. Bowman's book of business was approximately $820,000,000, and includes many accounts of more than $50,000,000 with very complex trusts and estates structures.

26.     From nearly the first day working with Mr. Bowman, it became clear that he exercised his power and control over Ms. Mirson.

27.     As a successful banker in a male dominated industry, and because Ms. Mirson is a woman, from the outset of working with Mr. Bowman, he treated Ms. Mirson in a manner that was significantly different than how he treated his male colleagues and subordinates.

28. Although Ms. Mirson had no issues working for a demanding boss and/or demanding clients, Mr. Bowman evolved from being demanding but tolerable to managing through intimidation, harassment, condescension, threats, and the future promise of money.

29. Indeed, in the year leading up to Ms. Mirson's medical leave, Mr. Bowman became hyper critical and blamed her for issues for which she did not create (and which she did not control).

30. Mr. Bowman never treated any of his male colleagues or subordinates in this manner.

31. By way of example only, Mr. Bowman frequently screamed at Ms. Mirson and regularly belittled her.

32. This was part of a well-known pattern by Mr. Bowman of treating female employees at the Bank far worse than male employees.

33. For instance, one of Ms. Mirson's female co-workers filed a formal complaint against Mr. Bowman regarding inappropriate verbal treatment she received which, upon information and belief, escalated to the attention of manager Mark Maller (Mr. Bowman's supervisor). However, nothing was done to correct this misconduct.

34. Additionally, a female executive assistant on The Private Bank platform and a longtime colleague of Ms. Mirson explained to Ms. Mirson that she is "scared" and "afraid" of Mr. Bowman. Indeed, this colleague would call Ms. Mirson rather than speak with Mr. Bowman directly because she could not tolerate dealing directly with Mr. Bowman.

35. Mr. Bowman's reputation for mistreating women was well-known.

36. As a result of the psychological trauma caused by Mr. Bowman, in or around November 2019, Ms. Mirson's Crohn's Disease and Colitis began to act up after many years

without serious incident. Ms. Mirson's doctors were clear that these conditions came back due to the stress that she faced at work at the hands of Mr. Bowman.

37.     As such, in or around March 2020 – just as the pandemic hit and the Bank ordered its employees to work from home – Ms. Mirson addressed her condition caused by stress from Mr. Bowman's mistreatment with members of management at the Bank, and indicated that she wanted to work part-time and/or pursue disability leave or early retirement.

38.     In response, and due to her stellar performance, Messrs. Bowman and Maller asked Ms. Mirson to continue in her role full-time and work remotely, which she agreed to do, provided that such accommodation was indefinite.  Indeed, Ms. Mirson could not return to working in person with Mr. Bowman due to her medical conditions created by Mr. Bowman's mistreatment.

39.     However, when Covid protocols were put in place, and everyone at the Bank was working remotely, Ms. Mirson's conditions of employment and her health further deteriorated. Rather than changing the manner in which he treated Ms. Mirson, Mr. Bowman's mistreatment worsened.

40.     By way of example only, in or around June 2022, Ms. Mirson followed Mr. Bowman's instructions on contacting a client directly regarding future report distribution.  When the client's team was unhappy with the communicated plan, Mr. Bowman blamed Ms. Mirson and berated her – both verbally and in writing – even though she followed his instructions exactly as communicated and was not the cause of the client issue.

41.     Similarly, Mr. Bowman belittled Ms. Mirson when calls on his cellular telephone failed through no fault of Ms. Mirson (*i.e.*, there was a known issue with Mr. Bowman's cell phone carrier where Ms. Mirson could not forward calls to Mr. Bowman which causes the calls to drop).

42.     The timing of Mr. Bowman's verbal and psychological attacks frequently occurred while Ms. Mirson was preparing for medical appointments and during medical infusions. Throughout her illness (until her medical leave), Ms. Mirson continued to work late hours and weekends to ensure all of her work got done.

43.     In addition, Mr. Bowman disciplined Ms. Mirson when she called a client or otherwise acted on her own initiative without expressly being asked by Mr. Bowman, while he also yelled at her when she purportedly did not take initiative to call clients without being asked to do so.

44.     Mr. Bowman treated Ms. Mirson like second-class hired help rather than a financial services professional who had more than 17 years of experience.

45.     Mr. Bowman did not treat any of the male employees at the Bank in a similar manner. By way of example only, a former male colleague of Ms. Mirson at Wells Fargo would sometimes fill in for her while she was on paid time off, and at times made trade errors for Mr. Bowman's clientele. Rather than harassing or belittling this male colleague (as was done to Ms. Mirson on numerous occasions), Mr. Bowman would simply permit that male colleague to correct his errors.

46.     It was well-known among the female employees at the Bank (as well as by Mr. Maller), that they should avoid Mr. Bowman because he treated female subordinates in this manner.  However, nothing was done to stop or rectify his discriminatory mistreatment of women.

47.     As a result of the stress and anxiety caused by Mr. Bowman's discriminatory mistreatment, Ms. Mirson withdrew her interest in the Certified Financial Planner ("CFP") program, in which she had planned to participate.  Becoming a CFP would have greatly advanced

Ms. Mirson's career and significantly increased her compensation potential at the Bank (and elsewhere).

48.     The final breaking point occurred on or about July 27, 2022. On that day, Ms. Mirson scheduled a call with a wholesaler to discuss long-term care policies for a client.  Ms. Mirson suggested scheduling the call on the Bank's conference line to avoid any telephone issues (which, as stated above, happened from time to time through no fault of Ms. Mirson).

49.     Mr. Bowman rejected the idea and insisted that the call be routed through Ms. Mirson. Due to the cell phone carrier's restriction highlighted above, Ms. Mirson merged the call with the wholesaler to Mr. Bowman (since she could not forward it), and walked away to perform other work.

50.     The call was dropped, resulting in Ms. Mirson asking the wholesaler to call Mr. Bowman directly, which did not create any issues. After the call, Mr. Bowman sent Ms. Mirson a voicemail chastising her for not being able to forward calls and went as far as to actually reduce her bonus allocation by .5% due to this issue.

51.     Ms. Mirson made clear, in writing, that she signed the reduced compensation agreement under duress. To make matters worse, Mr. Bowman joked about this decrease in Ms. Mirson's compensation by stating, in sum and substance, "gee that was a costly lesson, huh Dinah."

52.     Similar to the conduct of many abusers, after almost every episode of Mr. Bowman's psychological abuse or degradation, he apologized and lauded Ms. Mirson's work, with the pattern starting over again. This was just a different approach to his control and manipulation over Ms. Mirson as a female subordinate.

53.     This constant cycle of abusive and discriminatory mistreatment caused extreme stress and anxiety, and directly resulted in the exacerbation of Ms. Mirson Crohn's Disease and Colitis.

**Ms. Mirson's Need to Take Medical Leave**

54.     Mr. Bowman's constant mistreatment resulted in Ms. Mirson's need to take a medical leave of absence to address her mental health and physical well-being.

55.     In addition to the flare up of Ms. Mirson's Crohn's Disease, she also was diagnosed with Post Traumatic Stress Disorder due to the years of psychological abuse suffered while working with Mr. Bowman.

56.     In light of this diagnosis, Ms. Mirson's physician recommended an immediate medical leave to treat her emotional distress and physical condition (which also coincided with Ms. Mirson breaking her foot and requiring surgery).

57.     Mr. Bowman's mistreatment was so egregious that Jeffrey M. Piliero, Senior Family Office Portfolio manager, reached out to Ms. Mirson in or around mid-June 2022 directly after a conference call to confirm her safety and security after he witnessed one of Mr. Bowman's numerous tirades directed at Ms. Mirson.  Mr. Piliero even offered Ms. Mirson his private cellular telephone number to contact him if the need ever arose.

58.     Although the Bank approved Ms. Mirson's FMLA protected leave, it did not stop Mr. Bowman from harassing her.

59.     With knowledge of her disabilities (most of which are stress-related and caused by Mr. Bowman) and need for medical leave, Mr. Bowman's relentless criticism, threats regarding reduced compensation, and harassment continued.

60.     By way of example only, on or about August 4, 2022, Mr. Bowman sent a voice message to Ms. Mirson stating, in sum and substance, "when are you coming back, because you have not told anyone when you are coming back.  I am too busy, and I pay you too much money for me to be chasing down answers to client questions."

**Ms. Mirson Complains to Employee Relations**

61.     Unable to withstand the continued harassment, Ms. Mirson formally complained to the Bank about Mr. Bowman's unlawful and discriminatory mistreatment.

62.     As part of a purported "investigation" into Ms. Mirson's claims, Ms. Mirson supplied additional information to Betsy Clausen, Employee Relations.  However, Ms. Mirson never heard back from Ms. Clausen, as it was clear that she did not actually conduct any investigation or contact the executives who witnessed some of the mistreatment and about whom Ms. Mirson provided information.

63.     Moreover, the Bank did not take any disciplinary action against Mr. Bowman.

64.     It is not surprising that Bank ignored Mr. Bowman's misconduct and protected him as he was one of the Bank's largest rainmakers.

**The Bank Terminates Ms. Mirson's Employment**

65.      Ms. Mirson remained on medical leave, as her physicians believed that her condition would significantly worsen if she returned to the frequent discriminatory and harassing abuse by Mr. Bowman.

66.     However, on or about August 19, 2024, while Ms. Mirson remained on medical leave, the Bank informed her that she would be terminated effective August 30, 2024.

67. The Bank's unlawful discriminatory misconduct was intentional, done with malice and/or showed a deliberate, willful, and wanton disregard for Ms. Mirson and her civil rights, in violation of Federal and Florida human rights laws.

68. As a result of the Bank's unlawful discrimination, Ms. Mirson has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to, loss of past and future income, equity, and benefits.

69. Ms. Mirson also has suffered irreparable damage to her reputation and career, as well as severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering.

### FIRST CAUSE OF ACTION
### DISCRIMINATION IN VIOLATION OF TITLE VII

70. Plaintiff repeats and realleges the allegations made in the above paragraphs of this Complaint as if fully set forth herein.

71. As alleged herein, Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff because of her gender (female).

72. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, damages including, but not limited to, economic and pecuniary losses (past and future), severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

73. Accordingly, as a result of Defendants' unlawful conduct in violation of Title VII, Plaintiff has been damaged as set forth herein and is entitled to the maximum damages available to her.

## SECOND CAUSE OF ACTION
## DISCRIMINATION UNDER THE FCRA

74. Plaintiff repeats and realleges the allegations made in the above paragraphs of this Complaint as if fully set forth herein.

75. As alleged herein, Defendants engaged in unlawful employment practices prohibited by the FCRA by discriminating against Plaintiff because of her gender (female).

76. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, damages including, but not limited to, economic and pecuniary losses (past and future), severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

77. Accordingly, as a result of Defendants' unlawful conduct in violation of the FCRA, Plaintiff has been damaged as set forth herein and is entitled to the maximum damages available to her.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests a finding of liability against Defendants herein as follows:

(a) Declaring that the acts and practices complained of herein by Defendants are in violation of Title VII and the FCRA;

(b) Awarding Plaintiff for her past and future loss of wages and benefits, plus interest;

(c) Awarding Plaintiff compensatory damages for the severe mental anguish, emotional distress, and humiliation caused by Defendants' actions described herein;

(d) Awarding Plaintiff punitive damages;

(e)      Awarding Plaintiff pre- and post-judgment interest;

(f)      Awarding Plaintiff the costs of litigating this action together with reasonable attorneys' fees and disbursements; and

(g)      Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful employment practices against him.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: August 26th , 2024
Wellington, Florida

Respectfully submitted,

**GONZALEZ, SHENKMAN & BUCKSTEIN PL**

By:     /s/ Brian Buckstein
        Brian D. Buckstein
        110 Professional Way
        Wellington, Florida  33414
        Telephone: (561) 227-1575
        bbuckstein@gsblawfirm.com

**GOODSTADT LAW GROUP, PLLC**

By:     _____
        Andrew S. Goodstadt
        1055 Franklin Avenue, Suite 304
        Garden City, New York  11530
        Telephone: (516) 307-1880
        agoodstadt@goodstadtlaw.com
        *To Be Admitted Pro Hac Vice*

- 15 -